FILED
DISTRICT COURT OF GUAM
APR 10 2006
MARY L.M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| FERNANDO NOVELO NOSTRATIS,<br><br>Defendant-Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff-Respondent. | Criminal Case No. 99-00100<br><br>Civil Case No. 04-00014<br><br>**ORDER** |

Petitioner Fernando Novelo Nostratis ("Nostratis") filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion").[1] The Court deems the matter appropriate for decision without oral argument. FED.R. CIV. P. 78. After considering all the submissions, the Court finds no basis for the relief as requested and DENIES Nostratis' motion.

### BACKGROUND

On January 25, 2000, Nostratis pled guilty to counts one and three of the Superceding Indictment which charged Conspiracy to Import Methamphetamine, in violation of 21 U.S.C. §§ 952(a), 960, and 963 and Attempt to Possess Methamphetamine with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. On May 21, 2002, the Court sentenced Nostratis to one hundred thirty-five (135) months imprisonment as to each count to run concurrently. The judgment of conviction was entered on the docket on May 28, 2002. On the same date, Nostratis filed an appeal with the Ninth Circuit. On March 11, 2003, the appellate court affirmed

---

[1] Nostratis filed his initial motion on March 17, 2004. *See*, Docket No. 111. On April 6, 2004, Nostratis filed a supplemental pleading to include additional grounds in light of the case, *United States v. Cabaccang*, 332 F.3d 622, *clarified by* 341 F.3d 905 (9th Cir. 2003) (en banc). *See*, Docket No. 113. The Court will construe Nostratis' subsequent filing as an addendum to the original. Both filings will be referred to collectively as the "motion."

**ORIGINAL**

Nostratis' conviction. *United States v. Fernando Novelo Nostratis*, No. 02-10296 (9th Cir. March 11, 2003). Nostratis incarcerated, brought this motion pursuant to 28 U.S.C. § 2255, requesting the Court to vacate his sentence and allow him to withdraw his plea. *See,* Docket Nos. 111 and 113.

## ANALYSIS

28 U.S.C. § 2255 allows persons in federal custody to collaterally challenge the constitutionality, legality or jurisdictional basis of the sentence imposed by a court.[2] *See, United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). Since such a challenge calls into question a conviction's finality, collateral relief is an extraordinary remedy that should only be granted when a fundamental defect could have resulted in a complete miscarriage of justice, or the rudimentary rules of fair procedure were not followed. *United States v. Timmreck*, 441 U.S. 780, 783, 99 S. Ct. 2085, 2087 (1979).

Nostratis claims that he is entitled to relief for the following reasons: 1) he was deprived of his rights under Article 36, of the Vienna Convention; 2) counsel at his change of plea was ineffective due to lack of preparation for trial, failing to raise the issue regarding Nostratis rights per the Vienna Convention, and for engaging in conduct which amounted to threats and coercion to accept the plea agreement; 3) appellate counsel was ineffective for failing to raise the issue in one and two above on appeal; and 4) he was improperly convicted of importation as charged in count one in light of *United States v. Cabaccang*, 332 F.3d 622, *clarified by* 341 F.3d 905 (9th Cir. 2003) (en banc).

**Procedural Bar**

Nostratis concedes that he failed to advance the instant claims in the district court prior to judgment in the criminal case and on direct appeal. Claims not asserted previously, although available, are procedurally barred absent a showing of cause and actual prejudice. *United States*

---

[2] The statute states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

*v. Frady*, 456 U.S. 152, 166 (1982). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998).

As noted, Nostratis did not raise the aforementioned issues before either the trial/sentencing court or appellate court. However, Nostratis alleges the reason he did not address these issues previously was due to ineffective counsel. *See, Murray v. Carrier*, 477 U.S. 478, 488 (1986)("[i]neffective assistance . . . is cause for a procedural default"). Accordingly the Court will consider Nostratis' claims in that context.

**Ineffective Assistance of Counsel Claims**.

To demonstrate ineffective assistance of counsel, Nostratis must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner fulfills the first prong of the *Strickland* test by showing that "the behavior complained of falls below prevailing professional norms." *United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996). An inquiry into counsel's conduct probes "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" especially where counsel's acts may be considered "'sound trial strategy.'" *Id.* at 689.

*Rights pursuant to Article 36 of the Vienna Convention.* Nostratis contends that his trial and appellate counsel were ineffective for failing to move for the dismissal of or object to his indictment due to the failure of law enforcement to advise him of his right to contact and seek assistance from the Philippine Consulate pursuant to Article 36 of the Vienna Convention. *See Vienna Convention on Consular Relations*, Apr. 24, 1963, art. 36, 21 U.S.T. 77.[3] Moreover,

---

[3] Article 36 provides in relevant part:

> With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
>
> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending

Nostratis maintains that this failure should result in the dismissal of the indictment against him. This claim, however, fails.

Neither the Supreme Court nor the Ninth Circuit has held that Article 36 confers individually enforceable rights. On the contrary, both courts have consistently concluded that remedies for Article 36 violations in criminal proceedings, such as suppression of evidence or dismissal of an indictment, are inappropriate or that procedural rules preclude courts from considering the issue. *See Medellin v. Dretke,* 544 U.S. 660, 125 S.Ct. 2088 (2005) (dismissing writ as improvidently granted); *Breard v. Greene,* 523 U.S. 371, 376, 118 S.Ct. 1352 (1998) (per curiam) (noting that Article 36 "arguably confers on an individual the right to consular assistance following arrest," yet ultimately holding that a procedural default prevented the claim from being heard); *United States v. Lombera-Camorlinga,* 206 F.3d 882, 885 (9th Cir.2000) (en banc) (suppression). Numerous other circuits have reached the same conclusion. *See United States v. Li,* 206 F.3d 56, 60 (1st Cir.2000) (suppression and dismissal); *United States v. De La Pava,* 268 F.3d 157, 165 (2nd Cir.2001) (dismissal); *Murphy v. Netherland,* 116 F.3d 97, 100 (4th Cir.1997) (procedural default); *United States v. Lawal,* 231 F.3d 1045, 1048 (7th Cir.2000) (suppression); *United States v. Ortiz,* 315 F.3d 873, 886 (8th Cir.2002) (suppression); *United States v. Minjares-Alvarez,* 264 F.3d 980, 986 (10th Cir.2001) (suppression); *United States v. Chanthadara,* 230 F.3d 1237, 1255-56 (10th Cir.2000) (suppression); *United States v. Duarte-Acero,* 296 F.3d 1277, 1281-82 (11th Cir.2002) (dismissal). In contrast, only two circuits have definitively held that, in the context of a criminal proceeding, Article 36 does not confer an individual right. *United States v. Jimenez-Nava,* 243 F.3d 192, 198 (5th Cir.2001); *United States v. Emuegbunam,* 268 F.3d 377, 394 (6th Cir.2001).

This Court is unaware of any Ninth Circuit decision holding that dismissal of the indictment would provide an appropriate remedy for a violation of the Vienna Convention. The Ninth Circuit has held that suppression of any wrongly obtained evidence is not the appropriate

---

State if, within its consular district, [that] a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

remedy for such a violation. *See Lombera-Camorlinga,* 206 F.3d at 885. Since suppression is not required as a remedy for Vienna Convention violations, it necessarily follows that the more serious remedy of dismissal of the indictment would not be required. The Convention itself says nothing about the appropriateness of obtaining an indictment despite a violation of its requirements, and certainly does not provide that an indictment must be dismissed if the Convention is violated. The Supreme Court has said, "it is extremely doubtful that... violation [of the Convention] should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial. *Breard,* 523 U.S. at 377. Here Nostratis has made no such showing. In short, the Court finds that Nostratis' claims concerning violation of the Vienna Convention are without merit as is his claim of ineffective assistance of counsel.

*Counsel's Investigation of Case and Preparation for Trial.* Nostratis contends that trial counsel was ineffective because she failed to further investigate several matters concerning his case and failed to adequately prepare for trial.

The Ninth Circuit recognized in *Lambert v. Blodgett,* 393 F.3d 943 (9th Cir. 2004), that "[c]ourts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence and where the additional evidence was unlikely to change the outcome at trial. *See, e.g., Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. 366 (1985)." In discussing the grave finality of guilty pleas, the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [competent].

*Tollett v. Henderson,* 411 U.S. 258, 266-67, 93 S.Ct. 1602,(1973). If a defendant pled guilty knowingly and voluntarily, he cannot show actual prejudice resulted from his trial attorney's failure to more thoroughly investigate the case before he pled guilty. *Id.*

Review of the record in this case reveals that the information Nostratis argues counsel did not request, was in fact turned over as part of discovery by the government in anticipation of trial.[4] Examination of those documents reveals that much of the information is highly inculpatory. The Court is hard pressed to find exculpatory evidence that would have changed the outcome of any potential trial. Nostratis has not shown the existence of any evidence that would have been obtained which would have influenced his decision to plead guilty. The Court finds that upon review of the entire record, there is not a reasonable probability under an objective standard that, but for the evidence that would be obtained, Nostratis "would have refused to plead and would have gone to trial." *Sanchez v. United States,* 50 F.3d at 1454 (9th Cir.1995).

Although Nostratis also claims counsel was not prepared for trial, he has not provided the Court with any information regarding his assertion.[5] The record is replete with evidence that shows counsel prepared for trial. Counsel met with Nostratis on several occassions.[6] Five days before the trial date, counsel informed the Court "[y]our Honor, I'm prepared to go to trial next week." *See* Atty. Withdrawal Mtn. At 19. Likewise, in entering the plea, Nostratis knowingly and voluntarily waived his right to call witnesses or raise any potential defenses.[7]

---

[4] The Court notes that on October 25, 1999, the Government filed approximately two hundred ten (210) pages of discovery as *Jencks* and potential *Brady* materials for possible impeachment of witnesses during trial. *See* Docket No. 27. These documents included Grand Jury transcripts, police reports and witness statements from Nostratis' 1995 and 1999 cases. Further, on the same date the government also filed a witness list and exhibit list with attached photographs/descriptions of what was to be offered. *See* Docket Nos. 29 and 30. On January 24, 2000 both amended witness and exhibit lists were filed. *See* Docket Nos. 44 and 45.

[5] The Court notes that trial counsel billed the Court in excess of 65 hours for her work on this case, 59 of which were reported to have been spent conducting interviews and conferences, reviewing records and investigative work. *See* Voucher No. 1004542. Further, counsel was always forthcoming in asking the Court for additional time concerning Nostratris' case when it was necessary for additional preparation or investigation. In fact, counsel had done so on two separate occasions. *See* Docket Nos. 16, 17, 26, 27, and 34. Likewise, Attorney Flores affirmatively represented to the Court that she was prepared to proceed to trial. *See* Hearing on Attorney Flores' Motion to Withdraw as Counsel Transcript ("Atty. Withdrawl Mtn.") at 19. Docket No. 119.

[6] *See* Atty. Withdrawal Mtn. at 4 and Testimony of Attorney Stephanie Flores, Transcript of hearing on Nostratis' Motion to Withdraw Guilty Plea ("Plea Withdrawal Mtn.") at 97-102, 106-109. Docket No. 106.

[7] The relevant portion of the Change of Plea hearing ("Plea") is as follows:

> Court:    I am going to advise you of your rights. Please listen closely. You have a right to plead not guilty to any offense charged against you, and to persist in that plea. That you would then have the right to

Accordingly, the Court finds that Nostratis' claims regarding counsel's lack of preparation and investigation are without merit and are therefore DENIED.

*Voluntariness of Guilty Plea.* Nostratis maintains that his plea was not voluntary because trial counsel coerced him into entering a guilty plea. Nostratis points to trial counsel's declaration in support of her motion to withdraw (filed January 13, 2000, Docket No. 40, Exhibit A) as evidence of irreconcilable conflict between himself and counsel.

Upon consideration of the totality of the circumstances, a guilty plea is considered valid only if the defendant intelligently and voluntarily pleads guilty under the totality of the circumstances. *See, Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469 (1970); *Boykin v. Alabama,* 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1711-12 (1969). A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving or understand what he is giving up and receiving in entering a guilty plea. *See, Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 (1976). Additionally, a guilty plea may be involuntary where induced by threats, misrepresentation, or promises "that are by their nature improper." *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2548 (1984).

Rule 11 imposes a series of requirements on district courts before they may accept a guilty plea. *See,* FED.R.CRIM.P. 11. These procedures are designed to ensure a defendant

---

> a trial by jury; that at trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt. That you would have the right to the assistance of a lawyer for your defense, the right to see and hear all the witnesses and have them cross-examined in your defense; the right on your own part to refuse to testify unless you voluntarily chose to do so in your own defense; and you have the right to the issuance of subpoenas to force the attendance of witnesses to testify in your defense. Do you understand so far?
>
> Nostratis: Yes, Your Honor.
> Court: Do you understand that should you decide not to testify or to put on any evidence, these facts cannot be used against you; do you understand?
> Nostratis: Yes, Your Honor.
> Court: Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial, and you will have waived or given up your right to a trial, as well as those other rights associated with a trial that I have just described?
> Nostratis: Yes, Your Honor.

Plea at 10-11. Docket No. 86.

7

pleading guilty understands his constitutional rights, the plea is being entered voluntarily with a full understanding of the nature of the crime charged and the consequences of the guilty plea, and a factual basis exists for the crime to which the plea is being offered.

In accordance with Rule 11(b)(2),[8] the Court inquired as to the voluntariness of Nostratis' guilty plea at his change of plea hearing on January 25, 2000:

| | |
|---|---|
| Court: | Okay. And did you discuss your case fully with your lawyer, Ms. Flores? |
| Nostratis: | Yes. |
| Court: | Okay. And are you fully satisfied with the advice and representation given to you in this case by your lawyer, Ms. Flores? |
| Nostratis: | Yes, Your Honor. |
| Court: | Is your willingness to plead guilty the result of discussions that you and your lawyer have had, with the other side? |
| Nostratis: | Yes. |
| Court: | Okay. Now, there should be a copy of the plea agreement in front of you. Now, did you have a opportunity to read this plea agreement and discuss it with your lawyer before you signed it? |
| Nostratis: | Yes, Your Honor, that's why I sign it yesterday. |
| Court: | Okay. I need to ask you these questions so that the record is clear that you know what you're doing, okay? |
| Nostratis: | Yes, Your Honor. |
| Court: | Now, do you understand the terms of the plea agreement? |
| Nostratis: | I understand, but not hundred percent clearly from my mind. |
| Court: | But your lawyer has explained it to you? |
| Nostratis: | She explained it to me yesterday. |
| Court: | And you are satisfied with that explanation? |
| Nostratis: | Yes, Your Honor. |
| Court: | That you understand it -- you understand it, at least the most important parts to it? |
| Nostratis: | Yes, sir. |
| Court: | Okay. Now, does the plea agreement represent all your understandings, or whatever deal you cut with the Government? |
| Nostratis: | Yes, sir. |
| Court: | Okay. Has anyone made other promises to you or assurances, other than what's in this plea agreement, in order to get you to plead guilty? |
| Nostratis: | Nothing, Your Honor. |

---

[8] FED. R. CRIM. P. 11(b)(2) provides:

> Before accepting a plea of guilty or *nolo contendere*, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in the plea agreement).

| | | |
|---|---|---|
| Court: | Has anyone attempted in any way to force you to plead guilty today? | |
| Nostratis: | No. | |
| Court: | Are you pleading guilty of your own free will because you are guilty? | |
| Nostratis: | Yes, Your Honor. | |

See Plea at 6-8, Docket No. 86.

Nostratis provided these answers while under oath. Nostratis implies that he only pled because counsel "utilized threats, undue influence and blatant lies to coerce and cow [me] into accepting the government's plea offer." The record in this case clearly indicates the contrary. In fact, at no point during his change of plea hearing, in his motion to withdraw his guilty plea, at his sentencing hearing or on direct appeal, did Nostratis raise this issue. He specifically stated that he had sufficiently discussed the case with his attorney, and was satisfied with Ms. Flores' representation. *Id.* He told the Court that he was pleading guilty because he was guilty. When Nostratis moved to withdraw his plea, he made no mention of the alleged coercion.[9] At the evidentiary hearing on the motion to withdraw his plea, trial counsel testified that no coercion occurred. She stated that she would never have allowed Nostratis to enter into the plea agreement if he was not in agreement with it.[10]

---

[9] Nostratis moved to withdraw his plea two years after he entered his plea of guilt just prior to his scheduled sentencing date.

[10] The relevant portions of testimony from the hearing on Nostratis' motion to withdraw his plea (Attorney David was present for the government and Attorney Gavras appeared representing Nostratis) are as follows:

| | |
|---|---|
| Ms. David: | And after you went over the plea agreement with him, was it his choice to accept and sign the plea agreement? |
| Ms. Flores: | I would never have enter the plea agreement with him if I did not believe it was his choice. |
| Ms. David: | And again, in that same vein, you would not have signed the plea agreement as well; correct? |
| Ms. Flores: | Most definitely not. I would not have signed the plea agreement if he did not agree with it. |

Plea Withdrawal Mtn. at 85. Docket No. 106.

| | |
|---|---|
| Ms. David: | And when Mr. Nostratis signed his plea agreement, this was his choice; isn't that correct? |
| Ms. Flores: | If you're asking me if he was coerced into signing it my answer would be no, he was not. |

*Id.* at 87.

9

Case 1:99-cr-00100   Document 120-2   Filed 04/10/2006   Page 3 of 7

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977). Accordingly, a habeas petitioner faces a heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral responses given in open court during a Rule 11 colloquy. *Id.* The Court here followed the Rule 11 procedures by extensively questioning Nostratis about the voluntariness of his plea. Nostratis has not proffered any credible explanation for what he now contends were perjured statements to the Court. He is bound by those statements and has not shown extraordinary circumstances that indicate his answers under oath were not true and his plea was coerced. Accordingly, Nostratis' claims and request for an evidentiary hearing in this regard are denied. *See United States v. Leonti,* 326 F.3d 1111, 1116 (9th Cir.2003) (noting that an evidentiary hearing is not warranted if the allegations, "when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal") (citation omitted).

### ***Cabaccang*** **Claims.**

Nostratis claims that the Ninth Circuit's decision in *Cabaccang* invalidates his conviction. *See United States v. Cabaccang,* 332 F.3d 622, *clarified by* 341 F.3d 905 (9th Cir. 2003) (en banc). In *Cabaccang,* the Ninth Circuit held that transportation of a controlled substance through international airspace on a nonstop flight from one United States location to another (including United States territories) does not constitute importation as prohibited by 21 U.S.C. § 952(a). *Id.* at 636. Prior to *Cabaccang,* under Ninth Circuit law, a showing by the government that the drugs entered the United States from international waters or international airspace would have been sufficient to support a finding of importation under § 952(a). *See Guam v. Sugiyama,* 846 F.2d 570, 572 (9th Cir. 1988); *United States v. Perez,* 776 F.2d 797, 801 (9th Cir. 1985). With *Cabaccang,* the Ninth Circuit explicitly overruled *Perez* and *Sugiyama*

---

| | |
|---|---|
| Mr. Gavras: | Now, based upon your memory, but based upon your knowledge, your firsthand knowledge, did he testify truthfully to everything at the hearing? |
| Ms. Flores: | Did he testify truthfully? |
| Mr. Gavras: | Right. |
| Ms. Flores: | I believe so, yes. |
| Mr. Gavras: | Okay. And if he hadn't testified truthfully, you certainly would have stopped him and remedied the matter; correct? |
| Ms. Flores: | Yes, as an officer of the court, I'm not allowed to let him to testify falsely, at least not knowingly. |

*Id.* at 93.

10

to the extent that they "address the transport of drugs through international airspace on a nonstop domestic flight." *Cabaccang*, 332 F.3d at 634.

Pursuant to the plea agreement Nostratis clearly and explicitly waived his right to collaterally attack his conviction. Plea Agreement, ¶ 9. The only avenues left open for attack are the validity of the plea agreement and/or an appeal of the sentence. Petitioner neither contests his sentence nor the validity of his plea agreement with regard to the elements of the offenses pled to or the aformentioned waiver. Instead, Nostratis seemingly argues that his conviction is void and the resulting sentence is not authorized by law.

However, upon review of the plea agreement, it is clear that Nostratis knowingly waived his right to make such an argument and to file a § 2255 motion. The right to file a § 2255 petition is statutory and, thus, may be waived as part of a plea agreement. *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). The Ninth Circuit has also held, a knowing and voluntary waiver of the right to appeal, contained in a plea agreement, bars a defendant's attempt to appeal a conviction or sentence even in the light of an intervening change in the law, or of newly discovered evidence. *See United States v. Johnson,* 67 F.3d 200, 202 (9th Cir.1995) (rejecting argument that waiver could not encompass appeal of alleged sentencing error premised on a law not yet enacted at time of waiver); *United States v. Abarca,* 985 F.2d 1012, 1013 (9th Cir.1993) (dismissing appeal where right was waived in plea agreement, despite newly discovered exculpatory evidence regarding the extent of involvement in crimes of conviction).

When entering into the plea agreement with Nostratis, the government bargained for the benefit of knowing that the convictions against Nostratis would not be disturbed by, for example, a subsequent change in the Ninth Circuit's interpretation of the importation statute. Although *Cabaccang* changed the interpretation of the law concerning importation, the *Cabaccang* holding was not so novel and surprising that it was not within the contemplation of the defendant and defense counsel at the time of the plea. *See Cabaccang,* 332 F.3d at 632 (citing *United States v. Ramirez-Ferrer,* 82 F.3d 1131, 1137 (1st Cir. 1996)). Additionally, because the plea agreement expressly waived the right to file a § 2255 motion, the Court can only assume that such a waiver was critical to the agreement. In exchange for Petitioner's plea of guilty and

11

waiver of this right, among others, the government has foregone opportunity to seek a greater sentence. In entering into the plea agreement, the government received the benefit of knowing that the conviction against Nostratis would not be disturbed by a § 2255 motion.

As a practical matter, plea bargains like Nostratis' are beneficial to all parties involved. The criminal defendant benefits because he or she frequently receives a significantly reduced sentence and a speedy disposition.[11] The government and law enforcement benefit because they often receive assistance with on-going investigations as part of the deal. The court system also benefits from a speedy resolution with minimal usage of court resources.

If courts were to invalidate agreements years after they were reached, despite an express waiver of a defendant's right to attack the conviction, the government would be greatly disadvantaged and the public at great risk. No longer could the government rest assured that the conviction would stand in spite of changes in statutory interpretation. Instead, the government would be at risk of having to dust off old investigations and seek out witnesses with faded memories, if, at the whim of the defendant the plea could be challenged. Additionally, such an outcome could significantly diminish the government's incentive to engage in plea bargaining at the beginning of a case and, in turn, diminish the likelihood that a defendant will be able to obtain a reduced sentence.

As previously noted, the waiver did not extend to a challenge of the validity of his plea agreement. A guilty plea may be attacked as involuntary if the record reveals that "neither the defendant, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged," see *Bousley v. United States*, 523 U.S. 614, 619, 118 S. Ct. 1604, 1609 (1998). However, Nostratis does not claim that the plea agreement is invalid in the aforementioned manner. This Court cannot *sua sponte* change Nostratis' attack on his conviction into an attack on his plea agreement. *United States v. Barron*, 172 F.3d 1153, 1158 (9th Cir. 1999).

Because Nostratis' plea agreement expressly waived his right to collaterally attack his convictions and because Nostratis does not attack the voluntariness of his waiver contained

---

[11] In this instance, the Court notes Nostratis sentencing was delayed for almoste 2 ½ years in order to facilitate his cooperation with other investigations.

within the plea agreement, Nostratis' § 2255 motion is improper in this regard. Accordingly, Nostratis' *Cabaccang* claim is DENIED.

## CONCLUSION

The Court, having thoroughly reviewed each of the issues raised by Nostratis, finds that the records of the case conclusively show that Nostratis is not entitled to relief. Accordingly, Nostratis' motion for relief pursuant to 28 U.S.C. § 2255 is DENIED.

**SO ORDERED** this  6  day of April, 2006.

ROGER T. BENITEZ*
**United States District Judge**

---

* The Honorable Roger T. Benitez, United States District Judge for Southern California, by designation.