FILED
DISTRICT COURT OF GUAM
APR 10 2006
MARY L.M. MORAN
CLERK OF COURT

**DISTRICT COURT OF GUAM**

**TERRITORY OF GUAM**

| | |
|---|---|
| FERNANDO NOVELO NOSTRATIS, | Criminal Case No. 99-00100 |
| Defendant-Petitioner, | Civil Case No. 04-00014 |
| vs. | |
| UNITED STATES OF AMERICA, | **ORDER** |
| Plaintiff-Respondent. | |

Petitioner Fernando Novelo Nostratis ("Nostratis") filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion").[1] The Court deems the matter appropriate for decision without oral argument. FED. R. CIV. P. 78. After considering all the submissions, the Court finds no basis for the relief as requested and DENIES Nostratis' motion.

## BACKGROUND

On January 25, 2000, Nostratis pled guilty to counts one and three of the Superceding Indictment which charged Conspiracy to Import Methamphetamine, in violation of 21 U.S.C. §§ 952(a), 960, and 963 and Attempt to Possess Methamphetamine with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. On May 21, 2002, the Court sentenced Nostratis to one hundred thirty-five (135) months imprisonment as to each count to run concurrently. The judgment of conviction was entered on the docket on May 28, 2002. On the same date, Nostratis filed an appeal with the Ninth Circuit. On March 11, 2003, the appellate court affirmed

---

[1] Nostratis filed his initial motion on March 17, 2004. *See*, Docket No. 111. On April 6, 2004, Nostratis filed a supplemental pleading to include additional grounds in light of the case, *United States v. Cabaccang*, 332 F.3d 622, *clarified by* 341 F.3d 905 (9th Cir. 2003) (en banc). *See*, Docket No. 113. The Court will construe Nostratis' subsequent filing as an addendum to the original. Both filings will be referred to collectively as the "motion."

**ORIGINAL**

Nostratis' conviction. *United States v. Fernando Novelo Nostratis*, No. 02-10296 (9th Cir. March 11, 2003). Nostratis incarcerated, brought this motion pursuant to 28 U.S.C. § 2255, requesting the Court to vacate his sentence and allow him to withdraw his plea. *See,* Docket Nos. 111 and 113.

## ANALYSIS

28 U.S.C. § 2255 allows persons in federal custody to collaterally challenge the constitutionality, legality or jurisdictional basis of the sentence imposed by a court.[2] *See, United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). Since such a challenge calls into question a conviction's finality, collateral relief is an extraordinary remedy that should only be granted when a fundamental defect could have resulted in a complete miscarriage of justice, or the rudimentary rules of fair procedure were not followed. *United States v. Timmreck*, 441 U.S. 780, 783, 99 S. Ct. 2085, 2087 (1979).

Nostratis claims that he is entitled to relief for the following reasons: 1) he was deprived of his rights under Article 36, of the Vienna Convention; 2) counsel at his change of plea was ineffective due to lack of preparation for trial, failing to raise the issue regarding Nostratis rights per the Vienna Convention, and for engaging in conduct which amounted to threats and coercion to accept the plea agreement; 3) appellate counsel was ineffective for failing to raise the issue in one and two above on appeal; and 4) he was improperly convicted of importation as charged in count one in light of *United States v. Cabaccang*, 332 F.3d 622, *clarified by* 341 F.3d 905 (9th Cir. 2003) (en banc).

**Procedural Bar**

Nostratis concedes that he failed to advance the instant claims in the district court prior to judgment in the criminal case and on direct appeal. Claims not asserted previously, although available, are procedurally barred absent a showing of cause and actual prejudice. *United States*

---

[2] The statute states, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

*v. Frady*, 456 U.S. 152, 166 (1982). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998).

As noted, Nostratis did not raise the aforementioned issues before either the trial/sentencing court or appellate court. However, Nostratis alleges the reason he did not address these issues previously was due to ineffective counsel. *See, Murray v. Carrier*, 477 U.S. 478, 488 (1986)("[i]neffective assistance . . . is cause for a procedural default"). Accordingly the Court will consider Nostratis' claims in that context.

**Ineffective Assistance of Counsel Claims**.

To demonstrate ineffective assistance of counsel, Nostratis must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner fulfills the first prong of the *Strickland* test by showing that "the behavior complained of falls below prevailing professional norms." *United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996). An inquiry into counsel's conduct probes "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" especially where counsel's acts may be considered "'sound trial strategy.'" *Id.* at 689.

*Rights pursuant to Article 36 of the Vienna Convention.* Nostratis contends that his trial and appellate counsel were ineffective for failing to move for the dismissal of or object to his indictment due to the failure of law enforcement to advise him of his right to contact and seek assistance from the Philippine Consulate pursuant to Article 36 of the Vienna Convention. *See Vienna Convention on Consular Relations*, Apr. 24, 1963, art. 36, 21 U.S.T. 77.[3] Moreover,

---

[3] Article 36 provides in relevant part:

> With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
>
> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending

3
Case 1:99-cr-00100 Document 120 Filed 04/10/06 Page 3 of 6

Nostratis maintains that this failure should result in the dismissal of the indictment against him. This claim, however, fails.

Neither the Supreme Court nor the Ninth Circuit has held that Article 36 confers individually enforceable rights. On the contrary, both courts have consistently concluded that remedies for Article 36 violations in criminal proceedings, such as suppression of evidence or dismissal of an indictment, are inappropriate or that procedural rules preclude courts from considering the issue. *See Medellin v. Dretke*, 544 U.S. 660, 125 S.Ct. 2088 (2005) (dismissing writ as improvidently granted); *Breard v. Greene,* 523 U.S. 371, 376, 118 S.Ct. 1352 (1998) (per curiam) (noting that Article 36 "arguably confers on an individual the right to consular assistance following arrest," yet ultimately holding that a procedural default prevented the claim from being heard); *United States v. Lombera-Camorlinga,* 206 F.3d 882, 885 (9th Cir.2000) (en banc) (suppression). Numerous other circuits have reached the same conclusion. *See United States v. Li,* 206 F.3d 56, 60 (1st Cir.2000) (suppression and dismissal); *United States v. De La Pava,* 268 F.3d 157, 165 (2nd Cir.2001) (dismissal); *Murphy v. Netherland,* 116 F.3d 97, 100 (4th Cir.1997) (procedural default); *United States v. Lawal,* 231 F.3d 1045, 1048 (7th Cir.2000) (suppression); *United States v. Ortiz,* 315 F.3d 873, 886 (8th Cir.2002) (suppression); *United States v. Minjares-Alvarez,* 264 F.3d 980, 986 (10th Cir.2001) (suppression); *United States v. Chanthadara,* 230 F.3d 1237, 1255-56 (10th Cir.2000) (suppression); *United States v. Duarte-Acero,* 296 F.3d 1277, 1281-82 (11th Cir.2002) (dismissal). In contrast, only two circuits have definitively held that, in the context of a criminal proceeding, Article 36 does not confer an individual right. *United States v. Jimenez-Nava,* 243 F.3d 192, 198 (5th Cir.2001); *United States v. Emuegbunam,* 268 F.3d 377, 394 (6th Cir.2001).

This Court is unaware of any Ninth Circuit decision holding that dismissal of the indictment would provide an appropriate remedy for a violation of the Vienna Convention. The Ninth Circuit has held that suppression of any wrongly obtained evidence is not the appropriate

---

State if, within its consular district, [that] a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

remedy for such a violation. *See Lombera-Camorlinga,* 206 F.3d at 885. Since suppression is not required as a remedy for Vienna Convention violations, it necessarily follows that the more serious remedy of dismissal of the indictment would not be required. The Convention itself says nothing about the appropriateness of obtaining an indictment despite a violation of its requirements, and certainly does not provide that an indictment must be dismissed if the Convention is violated. The Supreme Court has said, "it is extremely doubtful that . . . violation [of the Convention] should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial. *Breard,* 523 U.S. at 377. Here Nostratis has made no such showing. In short, the Court finds that Nostratis' claims concerning violation of the Vienna Convention are without merit as is his claim of ineffective assistance of counsel.

*Counsel's Investigation of Case and Preparation for Trial.* Nostratis contends that trial counsel was ineffective because she failed to further investigate several matters concerning his case and failed to adequately prepare for trial.

The Ninth Circuit recognized in *Lambert v. Blodgett,* 393 F.3d 943 (9th Cir. 2004), that "[c]ourts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence and where the additional evidence was unlikely to change the outcome at trial. *See, e.g., Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. 366 (1985)." In discussing the grave finality of guilty pleas, the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [competent].

*Tollett v. Henderson,* 411 U.S. 258, 266-67, 93 S.Ct. 1602,(1973). If a defendant pled guilty knowingly and voluntarily, he cannot show actual prejudice resulted from his trial attorney's failure to more thoroughly investigate the case before he pled guilty. *Id.*

Review of the record in this case reveals that the information Nostratis argues counsel did not request, was in fact turned over as part of discovery by the government in anticipation of trial.[4] Examination of those documents reveals that much of the information is highly inculpatory. The Court is hard pressed to find exculpatory evidence that would have changed the outcome of any potential trial. Nostratis has not shown the existence of any evidence that would have been obtained which would have influenced his decision to plead guilty. The Court finds that upon review of the entire record, there is not a reasonable probability under an objective standard that, but for the evidence that would be obtained, Nostratis "would have refused to plead and would have gone to trial." *Sanchez v. United States,* 50 F.3d at 1454 (9th Cir.1995).

Although Nostratis also claims counsel was not prepared for trial, he has not provided the Court with any information regarding his assertion.[5] The record is replete with evidence that shows counsel prepared for trial. Counsel met with Nostratis on several occassions.[6] Five days before the trial date, counsel informed the Court "[y]our Honor, I'm prepared to go to trial next week." *See* Atty. Withdrawal Mtn. At 19. Likewise, in entering the plea, Nostratis knowingly and voluntarily waived his right to call witnesses or raise any potential defenses.[7]

---

[4] The Court notes that on October 25, 1999, the Government filed approximately two hundred ten (210) pages of discovery as *Jencks* and potential *Brady* materials for possible impeachment of witnesses during trial. *See* Docket No. 27. These documents included Grand Jury transcripts, police reports and witness statements from Nostratis' 1995 and 1999 cases. Further, on the same date the government also filed a witness list and exhibit list with attached photographs/descriptions of what was to be offered. *See* Docket Nos. 29 and 30. On January 24, 2000 both amended witness and exhibit lists were filed. *See* Docket Nos. 44 and 45.

[5] The Court notes that trial counsel billed the Court in excess of 65 hours for her work on this case, 59 of which were reported to have been spent conducting interviews and conferences, reviewing records and investigative work. *See* Voucher No. 1004542. Further, counsel was always forthcoming in asking the Court for additional time concerning Nostratris' case when it was necessary for additional preparation or investigation. In fact, counsel had done so on two separate occasions. *See* Docket Nos. 16, 17, 26, 27, and 34. Likewise, Attorney Flores affirmatively represented to the Court that she was prepared to proceed to trial. *See* Hearing on Attorney Flores' Motion to Withdraw as Counsel Transcript ("Atty. Withdrawl Mtn.") at 19. Docket No. 119.

[6] *See* Atty. Withdrawal Mtn. at 4 and Testimony of Attorney Stephanie Flores, Transcript of hearing on Nostratis' Motion to Withdraw Guilty Plea ("Plea Withdrawal Mtn.") at 97-102, 106-109. Docket No. 106.

[7] The relevant portion of the Change of Plea hearing ("Plea") is as follows:

| | |
|---|---|
| Court: | I am going to advise you of your rights. Please listen closely. You have a right to plead not guilty to any offense charged against you, and to persist in that plea. That you would then have the right to |